**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 23, 2022

Andrew H. Sauder, Esquire
Dailey LLP
1201 North Orange Street, Suite 7300
Wilmington, Delaware 19808

Sean A. Meluney, Esquire
Benesch, Friedlander, Coplan & Aronoff LLP
222 Delaware Avenue, Suite 801
Wilmington, Delaware 19801

David B. Anthony, Esquire
Berger Harris LLP
1105 North Market Street, Suite 1100
Wilmington, Delaware 19801

RE: ***DG BF, LLC, et al. v. Michael Ray, et al.***,
Civil Action No. 2020-0459-MTZ

Dear Counsel,

I write to address the Defendants' pending Application for Attorneys' Fees and Costs (the "Application").[1] The Application seeks fees over and above those that were already shifted for discovery misconduct, citing the bad faith exception to the American Rule and a new fee-shifting provision in the governing operating

---

[1] Docket Item ("D.I.") 250. Citations in the form "App. —" refer to the Application. The Application attached several exhibits, which are cited in the form "App. Ex. —." The Application was also supported by two affidavits and a declaration submitted by Defendants' counsel; these are cited as "Meluney Aff. —," "Perry Aff. —," and "Anthony Decl. —," respectively. Citations in the form "AB —" refer to Plaintiffs' Answering Brief in Opposition to Defendants' Application for Attorneys' Fees and Costs, available at D.I. 265. And citations in the form "RB —" refer to Defendants' Reply Brief in Support of Its Application for Attorneys' Fees and Costs.

agreement. Plaintiffs argue that the additional fees sought are unreasonable, and that they did not bring or litigate this matter in bad faith. Plaintiffs' litigation misconduct already resulted in dismissal of their claims, as I detailed in an order dated November 19, 2021 (the "Order").[2] This letter presumes familiarity with the Order's series of unfortunate events and its defined terms. For the additional reasons I will explain, Defendants' Application is granted.

## I.    Plaintiffs Litigated In Bad Faith.

My analysis begins where the Order left off. That Order explained that while other sanctions had been levied against Plaintiffs for their misconduct, they had failed to remedy and stop Plaintiffs' contempt, so no sanction other than dismissal would suffice.[3] It is difficult for me to discern any space between litigation so contumacious that only the ultimate sanction of dismissal will have any effect, and bad faith litigation. If there is any such space, this case does not fall within it. I conclude Plaintiffs litigated in bad faith.

---

[2] *DG BF, LLC v. Ray* (*Order*), 2021 WL 5436868 (Del. Ch. Nov. 19, 2021); D.I. 253.

[3] *Id.* at *5–7.

Under the American Rule, litigants are expected to bear their own costs of litigation absent some special circumstances that warrant a shifting of attorneys' fees, which, in equity, may be awarded at the discretion of the court. The bad faith exception to the American Rule applies in cases where the court finds litigation to have been brought in bad faith or finds that a party conducted the litigation process itself in bad faith, thereby unjustifiably increasing the costs of litigation. There is no single standard of bad faith that warrants an award of attorneys' fees in such situations; rather, bad faith is assessed on the basis of the facts presented in the case. Courts have found bad faith conduct where parties have unnecessarily prolonged or delayed litigation, falsified records, or knowingly asserted frivolous claims. Specific behavior that has been found to constitute bad faith in litigation includes misleading the court, altering testimony, or changing position on an issue. The bad faith exception is not lightly invoked. The party seeking a fee award bears the stringent evidentiary burden of producing "clear evidence" of bad-faith conduct.[4]

Defendants have produced such evidence. First, Plaintiffs "unnecessarily prolonged [and] delayed litigation."[5] By way of example:

---

[4] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 850–51 (Del. Ch. 2005) (footnotes omitted) (citing *Barrows v. Bowen*, 1994 WL 514868, at *1 (Del. Ch. Sept. 7, 1994), and *Arbitrium (Cayman Is.) Handels v. Johnston*, 705 A.2d 225, 231 (Del. Ch. 1997), *aff'd* 720 A.2d 542 (Del. 1998), and *Jacobson v. Dryson Acceptance Corp.*, 2002 WL 31521109, at *16 (Del. Ch. Nov. 1, 2002), and *Shapiro v. Healthcare Acq., Inc.*, 2004 WL 878018, at *1 (Del. Ch. Apr. 20, 2004)).

[5] *Id.* at 851.

- "Rather than focusing on discovery, Plaintiffs engaged in motion practice, filing a motion to appoint a receiver over AGR (which Plaintiffs withdrew after Defendants moved to strike it) and two motions to extend the scheduling order (which Defendants briefed and which were denied for failure to establish excusable neglect). Plaintiffs also took time to amend their nearly identical complaint in a parallel action pending before the Supreme Court of the State of New York."[6]
- Plaintiffs opposed a motion to compel "without offering any substantive grounds for their opposition."[7]
- "Plaintiffs' forwarding counsel was extremely obstructive at the Court of Chancery Rule 30(b)(6) deposition of Menashe as DG BF's representative on document retention. Defendants were again forced to resort to motion practice, and were awarded a second deposition on August 17."[8]
- After the Court ordered Plaintiffs to image and search Demeter's server, Demeter (which Menashe controls) filed a motion to quash production of the server image.[9] "And again, rather than attending to their own obligations, Plaintiffs took countermeasures, demanding on August 24 that *Plaintiffs* image *AGR*'s server 'for all financial records going back to when [Menashe] invested in the company.'"[10]
- Plaintiffs' utter failure to properly collect, produce, and log discovery, in knowing and brash contempt of orders as detailed in the Order, also contributed substantially to the well-over thirty motions or letter applications filed in this case over eighteen months.[11]

---

[6] *Order*, 2021 WL 5436868, at *2 (footnotes omitted) (citing D.I. 147, D.I. 152, D.I. 158, D.I. 166, D.I. 182, D.I. 184, D.I. 195, D.I. 202, and D.I. 212).

[7] *Id.* at *3 (citing D.I. 172).

[8] *Id.* at *4 (footnotes omitted) (citing D.I. 180, D.I. 196, D.I. 197, and D.I. 204).

[9] *Id.* (citing D.I. 234).

[10] *Id.* (citing D.I. 231, Ex. 9).

[11] *See, e.g.*, D.I. 146; D.I. 158; D.I. 180; D.I. 182; D.I. 212; D.I. 225; D.I. 231; D.I. 236; D.I. 238; D.I. 250; *see also* D.I. 272 at 6–7.

Second, Menashe made false statements on the record.

- "Menashe used text messaging to conduct AGR business, but continued his practice of actively deleting his text messages through the pendency of this litigation. Menashe testified that he did not text about business matters, but that testimony was undermined by texts Defendants produced; when confronted, Menashe then testified he deleted all such messages."[12]
- Menashe also represented in briefing, attempting to defend his litigation misconduct, that he had never been involved in litigation before.[13] This was demonstrably false.[14]

Finally, Plaintiffs "knowingly asserted frivolous claims," most significantly a claim that Defendants fraudulently induced Plaintiffs into investing in AGR by presenting false financials that were later revised downward.[15] Plaintiffs' litigation conduct regarding their anchoring fraud claim betrays that they knew that claim was frivolous all along.[16]

---

[12] *Order*, 2021 WL 5436868, at *2 (footnotes omitted) (citing D.I. 146, and D.I. 225).

[13] D.I. 237 at 2.

[14] *See* D.I. 242, Ex. 31; D.I. 242, Ex. 32.

[15] *See Beck*, 868 A.2d at 851.

[16] *See* Sam Reisman, *Chancery Preserves Investor's Fraud Claim Against Pot Co.*, LAW360 (March 2, 2021, 8:40 PM), https://www.law360.com/articles/1360493 (reporting that Plaintiffs' counsel described the fraud claim as "the crux of the dispute").

- Plaintiffs "refused to answer several core questions, including to identify the due diligence they performed relating to DG BF's investment in AGR, and to identify the material omissions Plaintiffs contend were concealed and the financial statements or projections that Plaintiffs believed included misrepresentations."[17]
- "Plaintiffs' failure to answer written discovery substantially weakened that [fraud] claim, as they declined to identify any omissions or misrepresentations in written discovery and so were precluded from offering any at trial."[18]
- "Plaintiffs have filed a claim for fraudulent inducement in New York State based on these same facts, telling that court that New York state and federal courts have exclusive jurisdiction over any disputes arising out of, or relating to the Purchase Agreement, *including, without limitation, Plaintiff's claims that Defendants fraudulently induced it to enter into the Purchase Agreement* by which it invested in AGR. Plaintiffs withdrew all claims relating to that Purchase Agreement from this case."[19]

And after the Court ordered Plaintiffs' repositories to be turned over to Defendants for review by Defendants' counsel, Defendants' counsel discovered a June 2020 email that revealed Menashe was never concerned that the financials he saw fraudulently induced his investment.[20] Menashe forwarded an email he sent his

---

[17] *Order*, 2021 WL 5436868, at *2 (citing D.I. 183).

[18] *Id.* at *7.

[19] *Id.* (alterations and internal quotation marks omitted) (quoting D.I. 212, Ex. 9 ¶ 7).

[20] App. Ex. 2. Plaintiffs should have produced this email in discovery.

counsel to a friend; in the underlying email, Menashe gave his counsel his thoughts

on a draft complaint:

- The issue is NOT that financials were revised downward – so avoid mentioning $s and %s – the issue is they were not transparent, did not disclose Roach issue, and extended Series E to a closing date of Oct 31 when they knew company was insolvent (per BOD mtg 34 days later)
- Need to focus on the key issues (mis-management, potential fraud, covering up actions, no governance etc,
- Lastly, there is no mention of my demands I have presenting since mid February including now repricing Series D and getting Vlad completely out of company including Board, and Cary on Board, indemnification to me for financials, etc… my list. Instead it says I want my $5m back which is fine, but think we should list demands instead[21]

Menashe's focus on corporate governance over fraudulent inducement is consistent

with Menashe's goal in May 2020, as related by his friend who introduced Menashe

to his counsel:

> As I see it the Company has not done what it should have done to protect his investment and, if appropriate, could use the Fox review and potential "shot over the bow" to ensure his ownership and rights are protected………. and begin serious discussions.[22]

---

[21] *Id.* (formatting in original).

[22] App. Ex. 1 (formatting in original).

Defendants' counsel also discovered a text message, which Menashe had deleted, in which he proposed leading the next round of financing—after the projections were revised.[23] Menashe's "shot across the bow" comprised a fraud claim that he knew was a blank. I conclude Menashe knowingly and in bad faith pressed litigation based on a frivolous claim.

I conclude that fee-shifting is warranted under the bad faith exception.[24] I do not reach whether the fee-shifting provision in the Company's operating agreement, introduced after this litigation began, can compel fee-shifting in this case.

## II. The Fees Defendants Seek Are Reasonable.

Defendants' Application, supported by the necessary Court of Chancery Rule 88 affidavits, requests over two million dollars in fees and expenses incurred by counsel for the individual defendants and separate counsel for the nominal defendant.[25] Of that amount, $608,666.88 is tied to previous fee awards and fees on fees for the Application;[26] the remainder is requested under today's bad faith award.

---

[23] *See* D.I. 242, Ex. 24.

[24] This includes the attorneys' fees incurred in connection with the temporary restraining order and the Series E financing. *See* AB at 19–20.

[25] *See* Meluney Aff. ¶¶ 2–5; Woodward Aff. ¶¶ 3–6; Anthony Decl. ¶¶ 3–5.

[26] App. at 14–15.

"Delaware law dictates that, in fee shifting cases, a judge determine[s] whether the fees requested are reasonable."[27]  The Court "has broad discretion in determining the amount of fees and expenses to award."[28]  The Court reviews a fee application pursuant to the factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct:

(1)   the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2)   the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3)   the fee customarily charged in the locality for similar legal services;

(4)   the amount involved and the results obtained;

(5)   the time limitations imposed by the client or by the circumstances;

(6)   the nature and length of the professional relationship with the client;

(7)   the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8)   whether the fee is fixed or contingent.[29]

---

[27] *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007) (citing Del. Lawyers' R. Prof'l Conduct 1.5(a)(1)(a)); *see also Aveta v. Bengoa*, 2010 WL 3221823, at *4 (Del. Ch. Aug. 13, 2010) (noting that the Court assesses fee awards for reasonableness).

[28] *Black v. Staffieri*, 2014 WL 814122, at *4 (Del. Feb. 27, 2014) (TABLE) (citing *Kaung v. Cole Nat'l Corp.*, 884 A.2d 500, 506 (Del. 2005)).

[29] *Mahani*, 935 A.2d at 246 (citing Del. Lawyers' Rules of Prof'l Conduct R. 1.5(a)(1)).

"Determining reasonableness does not require that this Court examine individually each time entry and disbursement."[30] Nor does it "require the Court to assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic."[31] "A party's expenses are reasonable if they were actually paid or incurred, were thought prudent and appropriate in the good faith professional judgment of competent counsel, and were charged at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances."[32] "For a Court to second-guess, on a hindsight basis, an attorney's judgment" as to whether work was necessary or appropriate "is hazardous and should whenever possible be avoided."[33]

---

[30] *Aveta*, 2010 WL 3221823, at *6 (citing, among other cases, *M & G Polymers USA, LLC v. Carestream Health, Inc.*, 2010 WL 1611042, at *76 (Del. Super. Apr. 21, 2010) (finding no authority that "requires this Court to engage in a line-by-line analysis of the components of an attorneys' fee application when an award of fees is based upon the bad faith exception to the American Rule")).

[31] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *12 (Del. Ch. Feb. 13, 2018) (internal quotation marks omitted) (quoting *Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012)).

[32] *Id.* (alterations and internal quotation marks omitted) (quoting *Delphi Easter P'rs Ltd. P'ship v. Spectacular P'rs, Inc.*, 1993 WL 328079, at *9 (Del. Ch. Aug. 6, 1993)).

[33] *Arbitrium*, 1998 WL 155550, at *4; *accord Sparton Corp. v. O'Neil*, 2018 WL 3025470, at *6 (Del. Ch. June 18, 2018) (noting that "the hourly rates charged by Defendants' counsel are not excessive, and the staffing of attorneys appears appropriate" and should not be second-guessed); *Weil*, 2018 WL 834428, at *12 (stating that "whether counsel appropriately pursued and charged for a particular . . . litigation tactic" should not be second-guessed (internal quotation marks omitted) (quoting *Fitracks*, 58 A.3d at 997));

In addition, "[w]hen awarding expenses as a contempt sanction or for bad faith litigation tactics, this Court takes into account the remedial nature of the award."[34] In those cases, the fee award "is designed to make whole the party who was injured by the other side's contumely. The remedial nature [of] the award commends putting primary emphasis on reimbursing the injured party. The results achieved are of secondary importance."[35] And when assessing the aggregate fees requested in situations involving contempt or bad faith, this Court considers whether they "are within the range of what a party reasonably could incur over the course of . . . pursuing an adversary engaged in a mix of open defiance, evasion and obstruction."[36]

---

*Aveta*, 2010 WL 3221823, at \*8 (expanding the rationale and noting where "staffing appears appropriate" it "need not be second-guessed"). Still, the Court may consider "whether the number of hours devoted to litigation was excessive, redundant, duplicative or otherwise unnecessary," and may decrease an award where the applicant's "own litigation efforts have in some ways been less than ideal in terms of timeliness or prudent focus." *Fitracks*, 58 A.3d at 996 (internal quotation marks omitted) (quoting *Mahani*, 935 A.2d at 247–48); *Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 882 (Del. Ch. 2012), *aff'd*, 59 A.3d 1206 (Del. 2012).

[34] *Aveta*, 2010 WL 3221823, at \*6 (citing *In re SS &C Techs., Inc. S'holders Litig.*, 2008 WL 3271242, at \*3 n.14 (Del. Ch. Aug. 8, 2008), and *Arbitrium*, 1998 WL 155550, at \*3).

[35] *Id.* (citation omitted).

[36] *Id.* (internal quotation marks omitted).

Against this standard, Plaintiffs dispute Defendants' requested fees, pointing to tepid "[i]ndicators [s]uggesting the [c]laimed [f]ees are [q]uestionable."[37] First, Plaintiffs object to the time Defendants' counsel spent on preparing their reply brief and for oral argument on their motion to dismiss. But Plaintiffs' amended complaint "span[ned] one hundred forty-three pages and offer[ed] twenty-four counts, taking readers on a comprehensive tour of the realms of fiduciary duty, contract, and tort."[38] In this regard, Plaintiffs' "shot across the bow" resembled buckshot: the work to clean the wounds was onerous, by design. Plaintiffs also sought and obtained an expedited schedule.[39] Plaintiffs' complaint that Defendants' counsel had to work many hours to quickly seek dismissal of those many counts fails to paint those hours as unreasonable. This is particularly so because the litigation was expedited,[40] the

---

[37] AB at 18.

[38] *DG BF, LLC v. Ray*, 2021 WL 776742, at *1 (Del. Ch. Mar. 1, 2021).

[39] *See* D.I. 2; D.I. 6; D.I. 28; D.I. 36.

[40] *See, e.g.*, *Brandt v. CNS Response, Inc.*, 2009 WL 2425757, at *1 (Del. Ch. Aug. 3, 2009) (recognizing the risk of "unnecessary confusion and expenditure of time and attorneys' fees in an expedited matter"); *In re First Interstate Bancorp Consol. S'holder Litig.*, 756 A.2d 353, 364 n.6 (Del. Ch. 1999) (considering, on a fee application, whether fees were incurred "in litigation conducted on a non-expedited schedule"), *aff'd sub nom. First Interstate Bancorp v. Williamson*, 755 A.2d 388 (Del. 2000).

fees were incurred while Defendants were expecting to pay them,[41] and today's fee award is intended to be remedial.[42]

Second, Plaintiffs complain that Defendants' counsel billed for reviewing the nearly identical lawsuit Plaintiffs filed in New York. These fees, particularly as modified in Defendant's reply brief, are reasonable; it was necessary for Defendant's counsel to be informed about Plaintiffs' second "shot across the bow."[43] Third, Plaintiffs object to Defendants' work responding to Plaintiffs' bungling of the expert identification deadline.[44] Defendants explain that they interviewed potential rebuttal experts in the event Plaintiffs achieved an extension and disclosed experts. This was prudent. Fourth, Plaintiffs object that Defendants made travel arrangements to depose Menashe in his home state of Montana as he requested, and to attend the looming trial.[45] These costs were reasonably incurred; I do not see how Defendants

---

[41] *See, e.g.*, *Aveta*, 2010 WL 3221823, at *6 (noting that one "indication" of reasonableness is the "reality" that when the fee-seeking party litigated the matter and "paid the expenses it now seeks to recover, [it] did not know that it would be able to shift those expenses to" the other party).

[42] *See supra* notes 34–36.

[43] RB at 9 n.7.

[44] AB at 21–22.

[45] *Id.* at 22.

could have been prepared to take Menashe's deposition or attend the trial without them.

Fifth, Plaintiffs contend the documentation of the fees shifted under previous awards is "patchy."[46] In assessing the reasonableness of Defendants' requested fees, "[t]he Court of Chancery has discretion in determining the level of submission required."[47] I conclude Defendants' Affidavits are adequate to give Plaintiffs notice of the fees.

Finally, Plaintiffs lodge a conclusory objection to the time spent pursuing fees on fees.[48] But the path of this case has been extraordinarily contentious and time-consuming, with zigs and zags that take time to document. Plaintiffs themselves sought an enlarged word count and extensive briefing schedule to respond to the Application.[49] I conclude Defendants' fees on fees are reasonable.

Defendants shall submit a proposed order reflecting the modification to the amount sought set forth in their reply brief. With that, I believe the only issue remaining before me is Defendants' motion for damages from the temporary

---

[46] *Id.*

[47] *Aveta*, 2010 WL 3221823, at *3 (citing *Cohen v. Cohen*, 269 A.2d 205, 207 (Del. 1970)).

[48] AB at 22.

[49] *See* D.I. 263.

restraining order. I ask Defendants to advise if any further submissions are requested, or to advise that the motion is ready to be considered on the papers. Those submissions are due within twenty days.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*